IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOHNNY LEWIS WILLIAMS,           )
                                 )
         Plaintiff,              )
                                 )
v.                               )          CV 99-BU-3012-S
                                 )
CHRIS RENAGINS; LT. JONES;       )
OFFICER LARRY KENNINS; and       )
DET. ANTHONY WILLIAMS,           )
                                 )
         Defendants.             )

**ENTERED**

OCT 31 2001

## MEMORANDUM OF OPINION

This is a civil action pursuant to 42 U.S.C. § 1983 in which the plaintiff, Johnny Lewis

Williams, alleges that his constitutional rights were violated while he was being transported to the

Fairfield City Jail in Fairfield, Alabama.   In his *pro se* complaint, plaintiff names as defendants

Lieutenant Jones, Officer Larry Kennins[1], and Detective Anthony Williams, all of whom are

Fairfield City Police personnel.  Plaintiff alleges that these defendants used excessive force on his

person.[2] As compensation for the alleged constitutional violations, plaintiff seeks money damages.

The Magistrate Judge entered an Order for Special Report (Document #32) directing that

copies of the complaint in this action be forwarded to defendants, requesting that they file a special

---

[1] The correct spelling is "Kennon".

[2] In his complaint, plaintiff also named Chris Renagins as a defendant and claimed that defendants Jones, Kennon and Williams denied him medical care. In a Report and Recommendation entered March 15, 1999, the undersigned magistrate judge recommended the dismissal of all claims against Warden Jones and dismissal of the medical care claims against defendants Jones, Kennon and Williams. By order entered April 24, 2001, the district judge adopted the magistrate judge's recommendation, dismissing all claims against Warden Jones and  the  medical care claims against defendants Jones, Kennon and Williams.



report addressing the factual allegations of the plaintiff's complaint.  The defendants were advised that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, would be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.  By the same Order, plaintiff was advised that after he received a copy of the special report submitted by the defendants he should file counter affidavits if he wished to rebut the matters presented by defendants in the special report.  Plaintiff was further advised that such affidavits should be filed within twenty days after receiving a copy of the defendants' special report.

The defendants filed a special report (Document #44) accompanied by their affidavits and pertinent documents.  Plaintiff was thereafter notified that he would have twenty days to respond to the motion for summary judgment, filing affidavits or other material if he chose.  Plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  Plaintiff did not file a response.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law.  Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues

and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted). However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Perry v. Thompson*, 786 F.2d 1093 (11th Cir. 1986).

3

## FACTUAL ALLEGATIONS

Plaintiff's Allegations

It appears from plaintiff's complaint that, on an unspecified date, he became involved in an altercation with Home Depot employee Chris Renagins in the security office of Home Depot in Fairfield, Alabama. Complaint (Document #1) at 4. Renagins pushed the plaintiff into the "edge of a cabinet . . . injuring [plaintiff's] head and back." *Id.* Plaintiff was "bleeding from the head" when Lieutenant Jones entered the office. *Id.* According to plaintiff, Lieutenant Jones handcuffed him and "drag[g]ed him outside the back of Home Depot." *Id.* Plaintiff was placed in a police car and transported to the Fairfield City Jail. Plaintiff complains that Officer Larry Kennon and Detective Anthony Williams "drugg'd [sic] [him] like a dog" into the jail. *Id.* Once inside the jail, plaintiff was "draged to a cell away from other inmates." *Id.*

Defendants' Special Report

The defendants "vigorously deny" that they " 'dragged' plaintiff as alleged . . . ." Special Report (Document # 44) at 11. Further, even if the plaintiff's allegations concerning the 'dragging' are true, defendants Jones, Kennon and Williams are entitled to qualified immunity to the extent that they have been sued in their individual capacities and are further protected by the doctrine of sovereign immunity to the extent that they have been sued in their official capacities. *Id.* at 6-7. While the Court agrees that sovereign immunity protects the defendants from suit in their official capacities, more discussion is required to determine whether or not the defendants are entitled to qualified immunity.

4

Lieutenant Jones states that on March 5, 1998, he was "working an off-duty job at The Home Depot in Fairfield, Alabama," when he was called to assist with an arrest. Jones Affidavit, (Exhibit A to Document #44) at 2. "Upon entering the store, I was told that the individual suspected of shoplifting had been combative with Home Depot employees and was escorted to an office in the back of the store." *Id.* As defendant Jones approached the office, he "heard [p]laintiff Johnny L. Williams cursing and threatening various Home Depot employees . . . " After entering the office, defendant Jones saw the plaintiff "standing with his back to a diagram board and bleeding from his head." *Id.* Jones asked the plaintiff to calm his behavior with regard to the Home Depot employees and so that Jones could check plaintiff's head injury, but plaintiff "continued cursing and threatening [the] two Home Depot employees . . . and refused Jones' attempts to "check his injuries . . ." *Id.*

Jones informed the plaintiff he was "under arrest and would need to place handcuffs on him." *Id.* Jones attempted to place handcuffs on the plaintiff "at least twice, and each time he pulled back and continued threatening me and Home Depot employees." *Id.* at 3. Thereafter, Jones sprayed the plaintiff with "a chemical spray to subdue him." *Id.* Defendant Jones insists the plaintiff was "subdued, handcuffed and brought under control." *Id.* When defendant Williams arrived at the scene, he assisted defendant Jones in escorting the plaintiff to the patrol car. *Id.* "As we opened the rear door of the patrol car to place Mr. Williams in the back seat, he pretended to faint." *Id.* The officers simply picked the plaintiff up and placed him in the back of the patrol car.

Officer Kennon states that plaintiff's allegations are false because Kennon was working as a bailiff in the municipal court of Fairfield on the date and time in question. Further, he had no

contact with the plaintiff while the plaintiff was incarcerated in the Fairfield City Jail. Document #48) at 1-2.

Detective Williams attests that he was an employee of the Fairfield City Police on March 5, 1998. Williams affidavit (Exhibit C to Document #44) at 1. When he arrived at Home Depot, the plaintiff, "who appeared belligerent and resistive, had already been arrested. . . . Lieutenant Jones and others assisted me in escorting Mr. Williams to a patrol car parked outside the rear door of the store . . . . *Id.* at 2. Absolutely no excessive force was used at any time in the transport of Mr. Williams to the City of Fairfield Jail. To the contrary, any force that was used to effectuate Mr. Williams' s transport was necessary and proper under the circumstances . . . . " *Id.* at 3.

Thereafter, the plaintiff was charged with theft of property and resisting arrest. (Exhibit B to Document #44) at 1-9.

## EXCESSIVE FORCE

The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Supreme Court held in *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992), that in assessing an inmate's excessive force claim, "the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through

6

force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Id.* at 6 (citations omitted). With these concerns in mind, the Court set out certain factors that should be considered in evaluating whether the force used was excessive. These factors include: 1) "the need for application of force;" 2) "the relationship between that need and the amount of force used;" 3) "the threat 'reasonably perceived by the responsible officials;'" 4) "any efforts made to temper the severity of a forceful response;" and 5) "the extent of the injury suffered by the inmate." *Id.* at 7. The *Hudson* Court made it clear that the extent of injury suffered by the inmate is only one of the many factors which should be considered, not a decisive one, when it said, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id.*

In the present case, plaintiff does not deny that he continually threatened and cursed the Home Depot employees and the defendants. Nor does he deny that he refused to obey defendant Jones' direct order to calm down. Further, the plaintiff does not refute that defendant Jones' told him that he was under arrest for theft of property nor does plaintiff refute that Jones' told the plaintiff he was going to handcuff him prior to ever attempting to do so. When attempts were made by defendant Jones to handcuff the plaintiff, plaintiff does not deny that he jerked away from defendant Jones on two occasions and continued to threaten both Jones and the Home Depot employees. Plaintiff does not dispute that after he was sprayed with mace, he was handcuffed taken to Fairfield City Jail, where emergency medical personnel were immediately called to assist him. Finally, plaintiff does not deny that he was charged with theft of property and resisting arrest.

7

As the Seventh Circuit Court of Appeals has observed:

> When an order is given to an inmate there are only so many choices available to the correctional officer. If it is an order that requires action by the [inmate], and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force.

*Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984), *cert. denied*, 470 U.S. 1085 (1985). The "use of [a chemical] substance in small amounts may be a necessary . . . technique if a prisoner refuses after adequate warning to [obey a direct order] or upon other provocation presenting a reasonable possibility that slight force will be required." *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979). Furthermore, "[t]he responsible institutional personnel on the spot are in a better position to determine when [the use of a chemical substance] is necessary than the courts." *Soto v. Dickey*, 744 F.2d at 1270.

Without question, plaintiff's repeated refusals to obey the defendant Jones' orders and his disruptive and threatening behavior necessitated the use of reasonable physical force to compel plaintiff to obey. Jones states that he sprayed plaintiff with pepper spray to subdue the plaintiff in an effort to encourage the plaintiff to allow himself to be handcuffed. The court also notes Officer William's affidavit, which states that he assisted defendant Jones' in escorting the plaintiff to the patrol car and that no excessive force was used at any time to transport the plaintiff to Fairfield City Jail. Plaintiff does not deny that he pretended to faint as the defendants were trying to place him in the patrol car. Further, plaintiff has not refuted defendant Kennon's assertion that he was acting as bailiff in Fairfield City Municipal Court during the time and place the plaintiff contends he was assaulted.

## Conclusion

"The core judicial inquiry" of "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm" is informed by the mandate that institutional officials must be given deference in the manner in which they maintain order. *See, e.g., Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994); *Williams v. Burton*, 943 F.2d 1572 (11th Cir. 1991), *cert. denied*, 505 U.S. 1208 (1992). Given the obvious need for force in this case, the amount of force used by Jones and Williams was not so unreasonable or extraordinary as to indicate anything but an attempt to compel plaintiff to obey a lawful order. Consequently, defendants Jones, Kennon and Williams are entitled to qualified immunity and as such their motion for summary judgment is due to be granted on these claims.

An Order consistent with this opinion shall be entered contemporaneously herewith.

DONE this the ___ day of _____, 2001.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE